**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

PANTERRA ENGINEERED PLASTICS,:
INC.,                                                  :
                                                             :
            Plaintiff,                             :
                                                             :
v.                                                        :  CIV. NO. 3:08cv1682 (WWE)
                                                             :
                                                             :
OCTOPUS PRODUCTS, LTD.,               :
                                                             :
            Defendant._____         :

**MEMORANDUM OF DECISION ON MOTION TO DISMISS**

In this action, plaintiff Panterra Engineered Plastics, Inc. claims tortious

interference with business relations and violation of the Connecticut Unfair Trade

Practice Act based on defendant Octopus Products, Ltd.'s alleged selling and

marketing without authorization of a product known as PepCore.  Defendant has filed a

motion to dismiss for lack of personal jurisdiction.  For the following reasons, the motion

to dismiss will be granted.

**BACKGROUND**

The following factual background is based on the facts alleged in the complaint,

the moving papers, and affidavits accompanying the motion to dismiss.

Octopus is a Canadian corporation with a principal place of business located in

Ontario, Canada.  Octopus is engaged in selling specialty decorative and surfacing

products for the design and woodworking industries in Canada and California.

Panterra is a corporation organized under the laws of the state of Delaware with its

principal place of business located in Weston, Connecticut.  As a result of an assignment, Panterra retains the right, title and interest in the PepCore product that was originally owned by Norfield Corporation.  Prior to the assignment to Panterra, Norfield entered into a licensing agreement with Benetti Impianti S.r.l., a company in Carrara, Italy, to allow it to sell PepCore in Europe, North Africa and the Middle East.  Benetti transferred the licensing agreement to another Italian Corporation, Bencore, S.r.l.

Panterra manufactures and sells PepCore and a thermoplastic composite panel made from the PepCore product.  The method of manufacturing PepCore and its related products constitutes trade secrets from which Panterra derives substantial economic value.

Panterra alleges that Octopus has obtained the PepCore product from Bencore and is selling, advertising and distributing this product under the names "Birdwing," "Starlight" and "Lightben."  Panterra asserts that Octopus is marketing and distributing PepCore in Connecticut and maintains a website in the United States at www.octopusproducts.com, which provides general information about its company and products to web browsers.   No sales orders may be placed on the website. Customers may make purchases of Octopus products by contacting Octopus by phone or electronic mail, although a customer may complete a sample request form on the website to obtain a sample.  Plaintiff has submitted two affidavits of individuals to whom Octopus has sent product samples upon request.  However, Octopus has not made any sales to individuals or corporations in Connecticut.

**DISCUSSION**

To survive a pretrial motion to dismiss for lack of personal jurisdiction, plaintiff

bears the burden of showing that the court has jurisdiction over the defendant.  Kernan v.

Kurz-Hastings, Inc., 175 F.3d 236, 240 (2d Cir. 1999).  Prior to discovery, a plaintiff need

only make a prima facie showing of jurisdiction through pleadings, affidavits and

supporting materials.  Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d

Cir. 1990).  All allegations are to be construed in the light most favorable to plaintiff, and

all doubts are to be resolved in plaintiff's favor, notwithstanding controverting evidence by

defendants.  A.I. Trade Finance Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993).

The amenability of a nonresident to suit in a federal court in a diversity action is

determined according to the law of the state where the court sits.  Arrowsmith v. United

Press Int'l, 320 F.2d 219, 223 (2d Cir. 1963).  In Connecticut, the court makes a two-step

inquiry.  Bensmiller v. E.I. Dupont de Nemours & Co., 47 F.3d 79, 81 (2d Cir. 1995).  The

court first determines whether the exercise of jurisdiction over the party is conferred by

Connecticut's long-arm statutes.  If jurisdiction is permissible under the long-arm statutes,

the court then determines whether the exercise of jurisdiction under the statute comports

with the provisions of the Fourteenth Amendment's due process clause.  Metropolitan

Life Ins. Co. v. Robertson-CECO Corp., 84 F.3d 560, 567 (2d Cir. 2006).

The relevant long-arm statute, Connecticut General Statutes § 33-929(f), provides:

> Every foreign corporation shall be subject to suit in this state, by a resident
> of this state or by a person having a usual place of business in this state,
> whether or not such foreign corporation is transacting or has transacted
> business in this state and whether or not it is engaged exclusively in
> interstate or foreign commerce, on any cause of action arising as follows:
> (1) Out of any contract made in this state or to be performed in this state;
> (2) out of any business solicited in this state by mail or otherwise if the corporation has

3

repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

Plaintiff argues that personal jurisdiction is conferred under § 33-929(f) because Octopus maintains a website, which constitutes solicitation of business in Connecticut.[1] The Connecticut Supreme Court, in interpreting the predecessor statute § 33-411, reasoned that by taking "affirmative measures designed to attract Connecticut residents," a defendant could reasonably foresee "its amenability to suit in Connecticut by persons raising claims similar to those of the plaintiffs when it solicited those persons' business in Connecticut." Thomason v. Chemical Bank, 234 Conn. 281, 298-299 (1995) (trustee bank that placed advertisements that specifically encouraged residents to transact banking business with it could reasonably foresee being sued in Connecticut).

Octopus's website provides general information to the web browsing public. Websites that provide information to consumers are "passive" websites that are analogous to nationally-available magazine or newspaper advertisements. Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000). Generally, courts have held that such passive websites do not confer jurisdiction. See, e.g., On-Line Technologies v. Perkin Elmer Corp.,141 F. Supp. 2d 246, 265 (D. Conn. 2001) (no

---

[1]Octopus does not transact business in Connecticut and has no contracts to be performed in Connecticut; it does not specifically solicit business in Connecticut or provide advertising particular to Connecticut; and it does not maintain offices in Connecticut or employ any Connecticut residents.

personal jurisdiction conferred by passive sites where telephone or mail is required to contact the seller); American Homecare Federation, Inc. v. Paragon Scientific Corp., 27 F. Supp. 2d 109, 113 (D. Conn. 1998) (no jurisdiction conferred by website, which did not repeatedly solicit business).  Use of an internet website advertisement, without more, is insufficient to constitute solicitation under Connecticut General Statutes § 33-929.  Milne v. Catuogno Court Reporting Servs., Inc., 239 F. Supp. 2d 195, 201 (D. Conn. 2002). However, courts have found personal jurisdiction conferred by websites that do solicit and transact business to customers in other states or that permit the exchange of information between the defendant and out of state customers, depending upon the level and nature of the exchange.  On-line Technologies, 141 F. Supp. 2d at 165.

Plaintiff asserts that the Octopus website generates interaction between Connecticut residents and Octopus.  Plaintiff relies upon affidavits from two Connecticut residents who have obtained samples through use of Octopus's on-line website. Gregory Korth states that he filled out the product information/sample request form provided on-line and submitted it on-line.  Nico Inglese avers that he ordered samples after reviewing the products on-line and contacted Octopus by telephone to request the samples.  Neither of these affiants claim to have bought any product from Octopus.

The website, which does not enable a consumer to purchase a product and makes no attempt to attract the Connecticut market, cannot be considered a repeated solicitation targeted to a Connecticut market.  Without facilitating contractual or business relations with Connecticut residents, the Octopus website does not give rise to reasonable foreseeablity that Octopus would be haled into court in Connecticut.

Finally, no alleged tortious conduct has occurred in Connecticut since Octopus

sells its products in Canada and California.  Accordingly, Octopus cannot be subject to suit based on "tortious conduct in this state...." or any other provision of the long-arm statute.  The Court will dismiss the complaint against Octopus for failure to satisfy the long-arm statute.

The Court need not consider whether such jurisdiction would be constitutionally permissible under the "minimum contacts" test of Int'l Shoe Co., v. Washington, 326 U.S. 310 (1945).  However, in light of the above discussion, it would be difficult to find either that Octopus could be considered to have purposefully directed its activities in Connecticut or that it had engaged in "continuous or systematic activities" in Connecticut. See Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 112 (1987).

## CONCLUSION

For the foregoing reasons, the motion to dismiss [doc. #8] is GRANTED.  The clerk is instructed to close this case.


SO ORDERED at Bridgeport this __5th__ day of May 2009.


```
            _____/s/_____
            WARREN W. EGINTON
            SENIOR UNITED STATES DISTRICT JUDGE
```